FILED
2022 Sep-08 PM 02:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| PAMELA AJOLOKO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  2:22-cv-00677-JHE |
| | ) | |
| JAMAS TECHNOLOGY, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### MEMORANDUM OPINION AND ORDER[1]

Plaintiff Pamela Ajoloko ("Ajoloko") and Defendant Jamas Technology ("Jamas") jointly move for approval of the parties' proposed settlement of Ajoloko's claims for unpaid compensation brought pursuant 29 U.S.C. § 201, *et seq.*, of the Fair Labor Standards Act ("FLSA"). (Doc. 8).   The parties also request that, on approval of the settlement, this action be dismissed with prejudice.  (*Id.* at 4).  For the reasons set forth below, the motion for settlement approval is **GRANTED IN PART**.

### I. Background Facts

According to her complaint, Ajoloko began working for Jamas as a bus driver and a "spotter" on or about April 21, 2021.  (Doc. 1 at ¶¶ 10-11).  As a bus driver, Ajoloko earned $20.00 per hour.  (*Id.* at ¶ 12).  As a "spotter," Ajoloko earned $15.00 per hour.  (*Id.* at ¶ 13).  In an average week, Ajoloko worked 40 hours as a bus driver and 8-16 hours as a "spotter."  (*Id.* at ¶ 16).

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 11).

Ajoloko filed suit against Jamas on May 26, 2022. (Doc. 1). Her complaint contains a single count alleging a violation of the FLSA's overtime provision, 29 U.S.C. § 207, on the basis that she was not paid a premium overtime rate for hours worked in excess of 40 per week, beginning on May 7, 2021 and continuing through the date of the complaint. (*Id.* at ¶¶ 17-27). Jamas has not yet answered the complaint.

On August 8, 2022, the parties filed their motion for settlement approval. (Doc. 8). The motion indicates Jamas has provided documents to Ajoloko supporting that she did not work as much overtime as alleged in the complaint. (*Id.* at 3). Thus, Ajoloko has revised her estimation of her damages downward, now taking the position she was not paid overtime for "several weeks in 2021." (*Id.*). The parties continue to dispute the amount of overtime Ajoloko is owed. (*Id.*). One reason for this is Jamas's contention that Ajoloko arrived for work early at times against its instructions. (*Id.*).

The parties have negotiated at arm's length a settlement under which Jamas pays Ajoloko $9,465.05, allocated as follows: $1,596.20 in back wages, $1,596.20 in liquidated damages, and $6,272.65 in attorney fees and costs. (*Id.* at 3-4). According to the motion for settlement approval, Ajoloko's attorney fees were negotiated separately from her wages and liquidated damages. (*Id.* at 4).

The settlement agreement also includes several notable provisions. First, Paragraphs 1 and 2 contain a number of releases. In Paragraph 1(e), Jamas includes a general release, releasing Ajoloko from "any and all claims whatsoever of any kind or nature arising out of or in any way connected with (i) Ajoloko's employment with Jamas, and (ii) any other claim Jamas may have arising from any event occurring prior to the date of this Agreement." (*Id.*). In Paragraph 2, Ajoloko releases Jamas from "from any and all claims whatsoever of any kind or nature, known

or unknown, arising out of or in any way connected with the employment of Ajoloko by Jamas . . . ." (*Id.* at 4).  In addition to any FLSA claims Ajoloko may have against Jamas (*id.* at 3), this includes claims under:

> 1. the Civil Rights Act of 1991; Title VII of the Civil Rights Act of 1964; the Civil Rights Act of 1866; the Americans with Disabilities Act; the ADA Amendments Act; the Age Discrimination in Employment Act; the Rehabilitation Act of 1973; the Family and Medical Leave Act; the Employee Retirement Income Security Act of 1974; the Equal Pay Act; the Lilly Ledbetter Fair Pay Act; the Fair Labor Standards Act; the Genetic Information Nondiscrimination Act; the Vietnam Era Veterans' Readjustment Assistance Act; the Uniformed Services Employment and Reemployment Rights Act of 1994; the Worker Adjustment and Retraining Notification Act; the Fair Credit Reporting Act; the Immigration Reform and Control Act of 1986; the Occupational Safety and Health Act of 1970; the Employee Polygraph Protection Act; and any amendments to any of the foregoing;
>
> 2. the Alabama Age Discrimination in Employment Act, (Alabama Code §§25-1-20 et seq.); the Alabama Affirmative Action Programs for Minorities law, (Alabama Code § 25-1-10); Alabama Code § 13A-11-123 (anti-blacklisting statute); Alabama Code § 12-16-8 (employer shall pay usual compensation to employee during employee's jury service); Alabama Code § 12-16-8.1 (employer not to discharge employee for jury service); Alabama Code § 25-5-11.1 (prohibition of discharge of employee for filing workers' compensation claim or for safety complaints); Alabama Code §§ 25-5-330 et seq. (drug-free workplace program); Alabama Code §§ 25-7-30 et seq. (right to work laws); Alabama HB 56 (immigration); and any amendments to any of the foregoing; and
>
> 3. any other federal, state, or local statute, regulation, ordinance, or common law, including without limitation the Unites States Constitution, the Constitution of the State of Alabama, and any law related to discrimination, terms and conditions of employment, or termination of employment, to the full extent that such a release is allowed by law.

(*Id.* at 4-5).  The release excludes claims "clearly and specifically stated by Ajoloko in any EEOC Charge of Discrimination pending against Jamas as of the date of the approval of this Agreement, nor any lawsuit filed by Ajoloko based on the same clearly and specifically stated claims following the EEOC's issuance to Ajoloko of a notice of right to sue on an EEOC Charge of Discrimination." (*Id.*).  In consideration for this release, Ajoloko receives $250.00.  (*Id.* at 2-3).  Notably, in Paragraph 1(e),

3

Next, the parties have included a confidentiality provision as Paragraph 3 of the Agreement. (*Id.* at 5). Under this provision, "Ajoloko agrees that she will not otherwise discuss or publish this Agreement or its terms with third parties other than her attorneys, accountants, financial advisors, and spouse." (*Id.*). However, Jamas "acknowledges that Ajoloko and her counsel must disclose this Agreement to the court in the pending lawsuit to obtain approval of the terms of this settlement, and Jamas further understands that the settlement may thereby become public record." (*Id.*). There is no indication that Ajoloko received any separate consideration for this provision.

Finally, Paragraph 6 of the agreement contains a severability clause. That clause states: "In the event that any provision of this Agreement is invalidated by a court of competent jurisdiction, then all of the remaining provisions of this Agreement shall continue unabated and in full force and effect." (*Id.* at 6).

## II. Analysis

### A. Reasonableness of Ajoloko's Compromise of Her Claims

If an employee proves his employer violated the FLSA, the employer must remit to the employee all unpaid wages or compensation, liquidated damages in an amount equal to the unpaid wages, a reasonable attorney's fee, and costs. 29 U.S.C. § 216(b). "FLSA provisions are mandatory; the 'provisions are not subject to negotiation or bargaining between employer and employee.'" *Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009) (quoting *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1352 (11th Cir. 1982)). "Any amount due that is not in dispute must be paid unequivocally; employers may not extract valuable concessions in return for payment that is indisputably owed under the FLSA." *Hogan v. Allstate Beverage Co., Inc.*, 821 F. Supp. 2d 1274, 1282 (M.D. Ala. 2011). Consequently, parties may settle an FLSA

claim for unpaid wages only if there is a bona fide dispute relating to a material issue concerning the claim.

In *Lynn's Food Stores*, the Eleventh Circuit stated there is only one context in which compromises of FLSA back wage or liquidated damage claims may be allowed: a stipulated judgment entered by a court which has determined that a settlement proposed by an employer and employees, in a suit brought by the employees under the FLSA, is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.  679 F.2d at 1352-53.  The primary focus of a court's inquiry in determining whether to approve an FLSA settlement is to ensure that an employer does not take advantage of its employees in settling their claim for wages and other damages due under the statute.  *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 714, 719 (E.D. La. 2008).

Having reviewed the parties' motion and the settlement agreement, the undersigned finds that they have reached a fair and reasonable resolution of a bona fide dispute.  Each side represents it has a different calculation of how much Ajoloko was underpaid.  Jamas asserts a defense to some of the hours Ajoloko claims.  The undersigned finds these facts set out a sufficient basis for Ajoloko to compromise her claims.

The *reasonableness* of Ajoloko's compromise of her claims is a somewhat more complicated issue given the materials currently before the court.  While it is not clear from the parties' motion or settlement agreement exactly how many hours are at issue, the undersigned can estimate how much the settlement amount itself represents.  "Where an employee in a single workweek works at two or more different types of work for which different nonovertime rates of pay (of not less than the applicable minimum wage) have been established, his regular rate for that week is the weighted average of such rates."  29 C.F.R. § 778.115.  Assuming Ajoloko worked at the high end of her estimated hours worked—56 hours per week—this means she spent about 71%

of the week (40 hours) working at her bus driver rate of $20.00 per hour and the remaining 29% (16 hours) working at the "spotter" rate of $15.00 per hour.  This yields a weighted average of $18.55 per hour nonovertime pay, for an overtime rate of $27.83 per hour.  If Jamas paid Ajoloko only $15.00 per hour for the 16 hours of overtime, it undercompensated her by $12.83 per hour. Thus, at the high end of hours worked and the low end of compensation paid, the settlement would compensate Ajoloko for 124.41 hours, or nearly eight weeks working 16 hours overtime.  The reality is almost certainly more complicated, but this calculation is consistent with Ajoloko's characterization of working "several weeks" in 2021 without receiving the appropriate overtime rate.  Based on this estimate, the undersigned finds the amount of the settlement to be reasonable and will not require the parties to provide further information about their dispute.

## B. Reasonableness of Attorney's Fees

"Where the attorney's fee was agreed upon separately, without regard to the amount paid to the plaintiff, then 'unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.'" *Davis v. The Filta Group, Inc*., 2010 WL 3958701, *2 (M.D. Fla. Sept. 20, 2010) (quoting *Bonetti v. Embarq Mgmt. Co.*, 2009 WL 2371407, *5 (M.D. Fla. Aug. 4, 2009)).  The parties represent that, consistent with *Lynn's Food Stores*, they determined the amount of backpay and liquidated damages to be paid to Ajoloko prior to discussing attorney fees, and they represent that Ajoloko's recovery was not affected by the amount of fees paid to her counsel.  (Doc. 8 at 4).  Accordingly, the undersigned will not separately consider the reasonableness of the amount allocated to attorney fees.

### C. Release of Unrelated Claims

The next issue is the release of Ajoloko's unrelated claims against Jamas. An employer may not "use an FLSA claim (a matter arising from the employer's failing to comply with the FLSA) to leverage a release from liability unconnected to the FLSA." *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010). However, the releases in this case are not "a gratuitous . . . release of all claims in exchange for money unconditionally owed to the employee," *id.*, for three reasons. First, Ajoloko receives separate consideration for executing the release of her claims (*see* doc. 8-1 at 3), so the release was not obtained in exchange for money due to Ajoloko under the FLSA. Second, the releases exclude any clearly and specifically stated claims Ajoloko may have currently pending with the EEOC, which alleviates concerns that Jamas is attempting to head off known litigation through this settlement agreement. Finally, the releases in this case are mutual (*see id.* at 3), strongly implying that it was not simply leveraged out of Ajoloko's FLSA claims. With these facts in mind, the undersigned finds the release is not inconsistent with the FLSA. Therefore, the settlement is approved.

### D. Confidentiality Provision

Finally, the undersigned must address the confidentiality provision. "Absent some compelling reason, the sealing from public scrutiny of FLSA agreements between employees and employers would thwart the public's independent interest in assuring that employees' wages are fair and thus do not endanger 'the national health and well-being.'" *Hogan v. Allstate Beverage Co.*, 821 F.Supp.2d 1274, 1283 (M.D. Ala. 2011) (quoting *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 708 (1945)). While an FLSA confidentiality provision is not *per se* unenforceable, a party seeking to include one must show compelling reasons why it should be upheld. *Briggins v. Elwood TRI, Inc.*, 3 F. Supp. 3d 1277, 1280 (N.D. Ala. 2014). Neither the parties' motion nor the agreement itself make out a case for the provision's necessity. Because the agreement's

severability clause renders the remainder of the agreement enforceable even without the confidentiality provision, the undersigned will simply strike Paragraph 3 and will approve the remainder of the agreement.

### III. Conclusion

The undersigned finds Ajoloko's FLSA claim represents a bona fide dispute over FLSA provisions, and the parties' settlement is a fair and reasonable resolution of this bona fide dispute. Therefore, the joint motion for approval of the settlement (doc. 8) is **GRANTED IN PART**, and the settlement is **APPROVED** as modified above. Either party may file a motion by **September 22, 2022** providing a compelling justification for the confidentiality provision and requesting reconsideration of the portion of this memorandum opinion and order striking that provision. If neither party files such a motion, the undersigned will enter an order dismissing this action with prejudice on **September 23, 2022.**

DONE this 8th day of September, 2022.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE